Shaun Setareh (SBN 204514)
        shaun@setarehlaw.com
Thomas Segal (SBN 222791)
        thomas@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Ste. 907
Beverly Hills, California 90212
Tel:    (310) 888-7771
Fax:    (310) 888-0109

Attorneys for Plaintiff,
ADAN ORTIZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAN ORTIZ , an individual on behalf of himself, all others similarly situated,<br><br>              Plaintiff,<br><br>       v.<br><br>GENCO, INC., a Delaware Corporation, KRAFT HEINZ FOOD COMPANY and DOES 1 to 50, inclusive,<br><br>              Defendants. | Case No. 4:16-cv-04601-YGR<br>Case No. 3:17-cv-03692-YGR<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**_Hearing Information_**<br>Date:          May 21, 2018<br>Time:         2:00 p.m.<br>Courtroom:    1<br>Judge:        Hon. Yvonne Gonzalez Rogers<br><br><br>**_Submitted Under Separate Cover_**<br>1. Declaration of Shaun Setareh;<br>2. [Proposed] Order |

1

**TABLE OF CONTENTS**

2    I.      INTRODUCTION...................................................................................2

3    II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY..............................3

4          A.     Overview of Litigation....................................................................3

5          B.     Plaintiff's Investigation And Discovery...............................................4

6          C.     The Parties Engaged in Arm's-Length Settlement Negotiations....................4

7          D.     Material Terms of the Proposed Class Action Settlement............................5

8                  1.      The Proposed Settlement Class.................................................5

9                  2.      The Settlement Benefits.........................................................5

10                 3.      A Narrow Release................................................................6

11                 4.      A Consumer-Friendly Claims Process..........................................7

12                 5.      The Proposed Notice to the Settlement Class.................................7

13                 6.      Proposed Attorney's Fees, Litigation Expenses, and Service Awards....7

14    III.     ARGUMENT.....................................................................................8

15          A.     The Court Should Grant Preliminary Approval of the Class Settlement...........8

16                 1.      The Standard for Preliminary Approval Has Been Met.....................8

17                 2.      The Settlement Is Reasonable In Light of the Strengths and

18                            Weaknesses of Plaintiff's Case.................................................9

19                 3.      The Risk, Expense and Complexity of the Case, Including the

20                            Risk of Decertification, Favor Approval of the Settlement.............13

21                 4.      The Amount Offered in Settlement Supports Approval....................14

22                 5.      The Allocation of the Settlement..............................................15

23                 6.      The Settlement Was Finalized After a Thorough Investigation..........15

24                 7.      The Views of Experienced Counsel Should Be Accorded Substantial

25                            Weight..........................................................................16

26          B.     Conditional Class Certification Is Appropriate for Settlement Purposes.........16

27                 1.      The Proposed Class Meets the Requirements of Rule 23..................16

28                 2.      The Proposed Classes Is Sufficiently Numerous...........................17

i

3.     There are Questions of Law and Fact that Are Common to the Class....17

4.     Plaintiff's Claims Are Typical of the Proposed Settlement Class.........18

5.     Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the  Proposed Settlement Class...........................................18

6.     Common Issues Predominate Over Individual Issues.................…..19

7.     Class Settlement Is Superior to Other Available Means of Resolution........................................................................19

C.     The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement.........................…..20

IV.     CONCLUSION.....................................................................…..21

# TABLE OF AUTHORITIES

**Cases:**

*Aceves v. AutoZone*, Case No.
5:14-CV-02032 (C.D. Cal. 2016)………………………………………..……………14

*Acosta v. Trans Union*,
243 F.R.D. 377, 386 (C.D. Cal. 2007)………………………………………...……..8

*Amchem Prods. v. Windsor*,
521 U.S. 591, 620 (1997)……………………………………..…………………16,19,20

*Armstrong v. Board of School Directors*,
616 F.2d 305, 314 (7th Cir. 1980)……………………………………………………..8

*Armstrong v. Davis*,
275 F.3d 849, 868 (9th Cir. 2001)……………………………………………………18

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708, 723 (9th Cir. 2010)……………………………………………………11

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610, 624 (N.D. Cal. 1979)………………………………….………..13,14

*Candy Shop Inc. v. Superior Court*,
210 Cal.App.4th 889 (2012.)……………………………………………………………10

*Churchill Village v. Gen. Elec.*,
361 F.3d 566, 575 (9th Cir. 2004)……………………………………………………..9

*Dilts v. Penske Logistics, LLC*
2014 WL 205039 (S.D. Cal. 2014)……………………………………………………12

*Duran v. US Bank Nat'l Ass'n*,
59 Cal. 4th 1, 39 & fn. 33 (2014)……………………………………..……………12

*Eisen v. Porsche Cars North American, Inc.*,
Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014)……………………………………………………….……..15,16

1  *Frank v. Eastman Kodak Co.*,
2  288 F.R.D. 174, 186 (W.D.N.Y. 2005)...................................................................14
3  *Franklin v. Kaypro*,
4  884 F.2d 1222, 1225 (9th Cir. 1989)...................................................................8
5  *Gribble v. Cool Transps., Inc.*,
6  2008 U.S. Dist. LEXIS 115560, at *26 (C.D. Cal. 2008)...................................8
7  *Grewe v. Cobalt Mortgage, Inc.*,
8  2016 WL 4014114 *4 (W.D. Wa. 2016)...............................................................6
9  *Hanlon v. Chrysler Corp.*,
10  150 F.3d 1011, 1027 (9th Cir. 1998)....................................................................7
11  *Lane v. Facebook, Inc.*,
12  No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010)................12
13  *Lewis v. Southwest Airlines*,
14  2018 WL 400775 *4 (N.D. Tex. 2018.)...............................................................11
15  *Linney v. Cellular Alaska P'ship*,
16  151 F.3d 1234, 1242 (9th Cir. 1998)..............................................................14,15
17  *London v. Wal-Mart Stores, Inc.*,
18  340 F.3d 1246, 1255 n.5 (11th Cir. 2003)..........................................................11
19  *Long v Tommy Hilfiger U.S.A.*,
20  671 F.3d 371(3d Cir. 2012)................................................................................10
21  *Lozano v. AT&T Wireless Services, Inc.*,
22  504 F.3d 718, 734 (9th Cir. 2007)......................................................................18
23  *Marisol v. Giuliani*,
24  126 F.3d 372, 376 (2nd Cir. 1997).....................................................................18
25  *Miller v. CEVA Logistics USA Inc.*,
26  2015 WL 729638, *7 (N.D. Cal. 2015)...............................................................13
27  *Mego Fin. Corp. Sec. Litig.*,
28  213 F.3d 454, 459 (9th Cir. 2000)......................................................................13

*M.L. Stern Overtime Litig.*,
No. 07-0118- BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009)...........8
*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950)................................................................................20
*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523, 525-526 (C.D. Cal. 2004).............................................................9
*Netflix Privacy Litig.*,
No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013)...8
*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615, 625 (9th Cir. 1982).......................................................................9
*Omnivision Techs., Inc.*,
559 F. Supp.2d 1036, 1042 (N.D. Cal. 2008).........................................................13
*Ortiz v. Volt Management Corp.*,
Case No. 4:16-cv-07096-YGR..............................................................................7
*Pac. Enters. Sec. Litig.*,
47 F.3d 373, 378 (9th Cir. 1995)........................................................................16
*Parra v. Bashas,' Inc.*,
536 F.3d 975, 978-79 (9th Cir. 2008)..................................................................17
*Portal Software Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007)..........13
*Pryor v. Aeroteck Sci., LLC*,
278 F.R.D. 516, 520 (C.D. Cal. 2011)...................................................................9
*Ramirez v. Trans Union, LLC*,
301 F.R.D. 408, 417-418 (N.D. Cal. 2014).............................................................17
*Rodriguez v. Hayes*,
591 F.3d 1105, 1124 (9th Cir. 2010)....................................................................18
*Rodriguez v. West Pub. Corp.*,
563 F.3d 948, 965 (9th Cir. 2009).................................................................9,12,13

*Rohm v. Thumbtack, Inc.,*

2017 WL 4642409 (N.D. Cal. 2017)..................................................................14

*Safeco Ins. Co. of Am. v. Burr,*

551 U.S. 47, 57-59 (2007)...............................................................................10

*Serna v. Big A Drug Stores, Inc.,*

No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007)................11

*Shlahtichman v 1-800 Contacts, Inc.,*

615 F.3d 794 (7th Cir. 2010)..........................................................................10

*Stanton v. Boeing Company,*

327 F.3d 938, 952 (9th Cir. 2003)......................................................................8

*Stokes v. Interline Brands, Inc.,*

2014 Wl 5826335 *4(N.D. Cal. 2014)..................................................................6

*Syed v. M-I LLC,*

852 F.3d 492, 496 (9th Cir. March 20, 2017.)........................................................11

*Taco Bell Wage & Hour Action,*

2012 WL 5923833 *10 (N.D. Cal. 2012)................................................................9

*Tijero v. Aaron Brothers, Inc.,*

2013 WL 60464 *8 (N.D. Cal. 2013)....................................................................6

*Torres v. Pet Extreme,*

No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015)..............11

*Torrisi v. Tuscson Elec.,*

8 F.3d 1370, 1376 (9th Cir. 1993)......................................................................9

*Toys 'R' Us-Del., Inc. FACTA Litig.,*

295 F.R.D. 438, 451 (C.D. Cal. 2014)................................................................12

*Uber FCRA Litigation,*

2017 WL 2806698 (N.D. Cal. 2017)..................................................................14

*Vasquez v. Coast Valley Roofing, Inc.,*

266 F.R.D. 482, 489 (E.D. Cal. 2010)............................................................12,17

vi

*Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541, 2551 (2011) ………………………………………………..…………..17

*Willes v State Farm Fire & Cas. Co.*

512 F.3d 565, 566 (9th Cir. 2008)…………………………………………..…………10

*Wolin v. Jaguar Land Rover N. Am.*,

617 F.3d 1168, 1175 (9th Cir. 2010)………………………………………………..20

**STATUES:**

Fed. R. Civ. P. 23……………………… ………………………………..…………..7

Lab. Code §§ 204………………………………………………………………….2

Lab. Code §§ 223………………………………………………………………….2

Lab. Code §§ 226.7………………………………………………………………….2

Lab. Code §§ 510………………………………………………………………….2

Lab. Code §§ 512………………………………………………………………….2

Lab. Code §§ 1194…………………………………………………………..…….2

Lab. Code §§ 1197…………………………………………………………….…..2

Lab. Code §§ 1198…………………………………………………………………...2

29 U.S.C. § 201…………………………………………………………..…………2

15 U.S.C. §§ 1681……………………………………………………………….2

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 21, 2018 at 2:00 p.m., in Courtroom 1 of the above-captioned Court, located at 1301 Clay Street, Oakland, California 94612, the Honorable Yvonne Gonzalez Rogers presiding, Plaintiff Adan Ortiz ("Plaintiff"), on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Preliminarily approve the settlement described in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Shaun Setareh;

(2) Approve distribution of the proposed Notice of Class Settlement to the Settlement Class;

(3) Appoint Plaintiff Adan Ortiz as Class Representative;

(4) Appoint Setareh Law Group as Class Counsel;

(5) Appoint Rust Consulting LLC as claims administrator; and

(6) Set a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration Shaun Setareh; (4) the Settlement Agreement; (5) the Notice of Class Action Settlement, including Postcard Notice; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Respectfully submitted,

Dated:  April 13, 2018                         SETAREH LAW GROUP

BY    /s/ Shaun Setareh
Shaun Setareh
Attorneys for Plaintiff
ADAN ORTIZ

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Adan Ortiz ("Plaintiff") moves the Court to preliminarily approve a class action settlement ("Settlement Agreement") with Defendant Genco I, Inc. (now named Fed Ex Supply Chain Inc.) ("Genco" or "Defendant") that confers substantial relief to all Settlement Class Members with a non-reversionary settlement fund of $3,150,000. The Settlement has two Settlement Classes, a California wage and hour class involving allegations of improper rounding of employee time records as well as failure to provide meal and rest breaks and a national Fair Credit Reporting Act "FCRA" class involving allegations of obtaining pre-employment background checks without providing legally compliant disclosure forms.

Plaintiff now moves for preliminary approval of the Settlement Agreement. The Settlement Agreement is an excellent result. 50% of the Net Settlement Fund will be allocated to the California wage and hour class and 50% will be allocated to the national FCRA class. The California wage and hour class is comprised of approximately 900 individuals. The National FCRA class is comprised of approximately 25,000 individuals. Assuming that 25% is awarded in attorneys' fees, $20,000 is awarded in litigation expenses, $70,000 is awarded in settlement administration costs, $5000 is awarded as a class representative service award.  $15,000 is awarded to Plaintiff for a no-rehire agreement, and $112,500 is paid to the Labor Workforce Development Agency, the Net Settlement Fund will be $2,140,000 or $1,070,000 for each class. For the California wage and hour class the net settlement payment will be $1,188 per class member (although of course this will be adjusted based on workweeks). For the National FCRA class the net settlement payment will be $42.80 per class member.

The settlement is non-reversionary. No class members will have to make a claim. Instead, checks will be mailed to them directly. However, because the California class members are potentially releasing FLSA claims, California class members who submit an FLSA opt-in form will receive a slightly larger settlement payment.

2

With a full understanding of the strengths and weaknesses of his case, Plaintiff engaged in arms'-length negotiations with Defendant, finally reaching an agreement following extensive negotiations. (Setareh Decl. ¶ 16.)

In light of the risks of continuing with this litigation, Plaintiff submits that this proposed settlement, which guarantees that all Settlement Class Members will be paid, is fair, reasonable, and adequate. Accordingly, the parties respectfully request that the Court enter an order (a) granting preliminary approval of the Settlement; (b) certifying the proposed Settlement Class; (c) appointing Plaintiff as the Class Representative; (d) appointing Setareh Law Group ("SLG") as Class Counsel; (e) approving the parties' proposed form and method of giving Settlement Class Members notice of the action and the proposed Settlement; (f) directing that notice be given to Settlement Class Members in the proposed form and manner; and (g) setting a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.  Overview of the Litigation

The wage and hour Complaint was filed on June 24, 2016.  In the wage and hour First Amended Complaint, Plaintiff sets forth the following causes of action: (1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512, and 1198); (2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7, and 1198); (3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1, and 1198); (4) Failure to Provide Accurate Written Wage Statements (Lab. Code § 226(a)); (5) Failure to Timely Pay All Final Wages (Lab. Code §§ 201-203); (6) Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")); (7) Failure to Pay Employees for All Hours Worked (29 U.S.C. § 201) and Civil Penalties under Lab. Code 2698, et seq.

The FCRA Complaint was filed on May 19, 2017. The FCRA Complaint sets forth the following causes of action: (1) Violation of 15 U.S.C. §§ 1681b(b)(2)(A) (FCRA); (2) Violation of 15 U.S.C. §§ 1681g(c) (FCRA); (3) Violation of California Civil Code § 1786 (ICRA); (4)

3

Violation of California Civil Code § 1785 (CCRA); and (5) Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

**B.     Plaintiff's Investigation and Discovery**

Plaintiff propounded written discovery including Requests for Production, Requests for Admission and Three Sets of Interrogatories. (Setareh Decl. ¶ 5.) Plaintiff also obtained a class list and pay roll and punch data. (Setareh Decl. ¶ 6.) Plaintiff's counsel interviewed putative class members in preparation for the mediation in this matter. (Setareh Decl. ¶ 7.)

As to the wage and hour claims, the evidence showed the following: (1) Defendant had defective written meal and rest break policies that failed to properly advise employees of their rights under California law(Setareh Decl. ¶ 9); (2) It was common for class members to miss meal breaks (Setareh Decl. ¶ 10); (3) based on an analysis of punch data the potential meal period premiums owed for missed late or short meal periods was $2,307,909 (Setareh Decl. ¶ 11); (4) class members did not always receive rest breaks (Setareh Decl. ¶ 12); (5) based on reasonable assumptions the potential rest period premiums owed for missed late or short rest breaks are $811,569.14 (Setareh Decl. ¶ 12); (6) Defendant rounded the time punches of class members to the nearest quarter hour (Setareh Decl. ¶ 13); (7) an analysis of punch data indicates that the rounding was unfavorable to class members in an aggregate amount of $452, 443.94 (Setareh Decl. ¶ 13.)

As to the FCRA claims, the evidence showed that the disclosure form that Defendant used during the class period contained extraneous information including information on state law rights under the laws of California, Minnesota and Oklahoma and a third party liability waiver: "I release employers and persons named in my application from all liability for damages on behalf of his/ her furnishing such information." (Setareh Decl. ¶ 14 and Exh.1.) Defendant pulled background checks on approximately 25,000 people using this form. (*Id.*)

**C. The Parties Engaged in Arm's-Length Settlement Negotiations**

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.   The Parties

4

attended a mediation on September 1, 2017 with mediator and retired California Superior Court Judge Stephen Sunvold who was on the Complex Litigation Panel of the Orange County Superior Court. After arms-length negotiations the parties arrived at a Settlement memorialized in the Settlement Agreement. (Setareh Decl.¶¶ 15-16; Exhibit 2).

### D. Material Terms of the Proposed Class Action Settlement

#### 1. The Proposed Settlement Class

The California (wage and hour) class consists of: ".all current and former non-exempt employees employed by Defendant in the state of California at any time between June 24, 2012 and the date the Court grants preliminary approval of this Settlement, except any employee who has individually adjudicated his/her claims during the Class Period." (Settlement Agreement § A(7)).

The FCRA/CCRAA/ ICRAA Class consists of: "all of Defendant's current, former and prospective applicants for employment in the United States (for FCRA) and California (for CCRAA/ICRAA) who applied for a job with Defendant at any time between May 19, 2012 and the date the Court grants preliminary approval of this Settlement for Class Members outside of California, and May 19, 2010 and the date the Court grants preliminary approval of this Settlement for Class Members within California, except any current employee, former employee or prospective applicant who has individually adjudicated his/her claims during the Class Period." (*Id.*)

#### 2. The Settlement Benefits

Under the Settlement, all Settlement Class Members who do not submit valid and timely Requests for Exclusion will receive a settlement check payment. The amount of the Settlement Benefit each Settlement Class Member will receive will be determined, based on the total amount of the Net Settlement Fund to be allocated among all Settlement Class Members and the total number of Settlement Class Members, as follows:

California Class: 50% of the Net Settlement Amount shall be apportioned to the California Class, which shall be divided by the total number of workweeks (rounded up to the nearest whole number) worked by all Class Members during the Class Period. The result shall be the Settlement Benefit Per Workweek. California Class Members who have FLSA claims and who submit a Consent to Join form will get 25% more than they otherwise would have been entitled to. To accomplish this, their workweeks will be

5

increased by 25% from the workweeks actually worked.

Subject to Paragraph 64(a), the gross amount of Settlement Benefits payable to an individual Class Member in the California Class (i.e. before deductions for income taxes) shall be calculated by multiplying the Settlement Benefit by Workweek by the total number of workweeks (rounded up to the nearest whole number) worked by the Class Member during the Class Period.

FCRA/CCRAA/ICRAA Class: Each Class Member who does not request exclusion shall receive a share of 50% of the Net Settlement Amount, which shall be divided by the total number of Class Members during the Class Period.

(Settlement Agreement § 64).

This approach is fair. Class members with wage and hour claims will be compensated pro rata based on the workweeks. Those class members with wage and hour claims who submit an opt in form to release their Fair Labor Standards Act claims will receive a higher pro rata payment. Class members with Fair Credit Reporting Act claims will each receive an equal share of the 50% of the Net Settlement Fund allocated to those claims.

### 3. A Narrow Release

The Settlement provides for the following release of claims:

California Class Members Release: Each Class Member who is a member of the California Class who fails to submits a timely and valid letter requesting exclusion from the Settlement shall, upon the Effective Date, be deemed to have released any and all claims against Defendant and any former and present parent, subsidiary, and affiliated corporations, and their officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities and causes of action under California law giving rise to potential liability for acts or omissions during the California Class Period which were or could have been raised as part of the Plaintiff's claims in the Action based on the facts alleged in the Complaint (the "Released California Claims and FLSA Claims"). As to the Released California Claims only, each Class Member who is a member of the California Class who fails to submit a timely and valid letter requesting exclusion from the Settlement waives all rights and benefits afforded by Section 1542 of the California Civil Code ("Section 1542"). Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

FCRA/CCRAA/ICRAA Class Members Release: Each Class Member who is a member of the FCRA/CCRAA/ICRAA Class who fails to submits a timely and valid letter requesting exclusion from the Settlement shall, upon the Effective Date, be deemed to have released any and all claims against Defendant and any

6

former and present parent, subsidiary, and affiliated corporations, and their officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities and causes of action under California or federal law giving rise to potential liability for acts or omissions during the FCRA/CCRAA/ICRAA Class Period which were or could have been raised as part of the Plaintiff's claims in the Action based on the facts alleged in the Complaint (the "Released FCRA/CCRAA/ICRAA Claims").

(Settlement Agreement § 81.)

### 4. A Consumer- Friendly Claims Process

Class members will not need to submit claim forms to recover their share of the Net Settlement Amount. (Settlement Agreement § 64.)  However, California Class members who submit an FLSA Consent to Joint Form will receive a larger share of the Net Settlement Amount because their workweeks used to determine their pro-rata share will be increased by 25%. (*Id.* § 64(a).)[1]

### 5. The Proposed Notice to the Settlement Class

Within approximately fifteen (15)  days of preliminary approval of the Settlement by the Court, Defendant shall provide to the Settlement Administrator information regarding each Settlement Class Member, including a list of each class member and the address of the class members. (Settlement Agreement  § 46(a).)  Within 10 days of receipt of the Class List, Class Members will be sent the appropriate Notice Packet (California Class Members will receive the FLSA and California Notice and Consent to Join Form, FCRA Class Members will receive a Postcard Notice and Class Members who are in both classes will receive both.) (*Id.* § 46(b).)

Prior to mailing, the Settlement Administrator will use reasonable standard skip-tracing devices to verify the mailing addresses of each Class Member. (*Id.* § 46(c).)

### 6. Proposed Attorney's Fees, Litigation Expenses, and Service Awards

The Settlement Agreement provides that Plaintiff's counsel can seek up to one third of the Settlement Fund. (Settlement Agreement § 68.) In light of the fact that these cases were

---

[1]  For FLSA claims an opt-in mechanism is a necessary part of the settlement. *E.g., Grewe v. Cobalt Mortgage, Inc.,* 2016 WL 4014114 *4 (W.D. Wa. 2016): "An FLSA settlement binds only those who affirmatively opt in."; *accord Stokes v. Interline Brands, Inc.,* 2014 Wl 5826335 *4(N. Cal. 2014);  Tijero v. Aaron Brothers, Inc.,* 2013 WL 60464 *8 (N.D. Cal. 2013).

7

settled at a comparatively early stage Plaintiff's counsel will seek a fee award of 25% of the Settlement Fund. (Setareh Decl. ¶ 17.) The Settlement Agreement also provides that Plaintiff's counsel can seek up to $20,000 in litigation expenses. (Settlement Agreement § 68.)  The Settlement Agreement provides that Plaintiff can seek a service award in the amount of $5000. (*Id.* § 69.) Additionally, and also subject to court approval, the Settlement Agreement provides for an Individual Payment to Ortiz for a no rehire agreement and release of his individual claims against Defendant in *Ortiz v. Volt Management Corp.*, Case No. 4:16-cv-07096-YGR.[2]

### 7. Payment to Settle Private Attorney General Act (PAGA) Labor Code Section 2699 Claim

The Settlement allocates $150,000 to settle the Private Attorney General Act (PAGA) Labor Code section 2699 claim, of which 75% goes to the State of California and 25% is paid back into the Net Settlement Fund. (Settlement Agreement § 73.)

## III.    ARGUMENT

### A.    The Court Should Grant Preliminary Approval of the Class Settlement

#### 1. The Standard for Preliminary Approval Has Been Met

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

In reviewing class action settlements, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  This reflects the longstanding policy in favor of encouraging settlement of class action suits, as "[l]itigation settlements offer parties and their counsel relief from the burdens

---

[2]  This Court ordered that matter to arbitration on June 2, 2017. ECF No. 38.

and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

In the preliminary approval stage, the Court first determines whether a class exists. *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates "whether the settlement is within the range of possible approval, such that there 'is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *In re M.L. Stern Overtime Litig.*, No. 07-0118- BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980)); *see also, Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original). In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, granting preliminary approval unless the settlement terms are so unacceptable that a formal fairness hearing would be a waste of time. *See* Manual for Complex Litigation §21.632.

At the outset, the fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013). This Settlement is the product of arms'-length negotiations Conducted over the course of many discussions. This non-collusive Settlement is entitled to "a presumption of fairness." *Gribble v. Cool Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560, at *26 (C.D. Cal. 2008).

In addition, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement: the extent of discovery completed and the stage of proceedings; the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of

9

further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; and the experience and views of counsel. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (citing *Torrisi v. Tuscson Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

### 2.    The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).   In assessing the strength of the plaintiff's case and the probability for success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).   There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

As to the wage and hour claims, the claims are that Defendant failed to provide meal and rest periods and engaged in improper rounding of employee time.

While courts have often certified meal and rest breaks and rounding claims of the kind involved in this case, other courts have denied certification of such claims. *E.g., Pryor v. Aeroteck Sci.,* LLC, 278 F.R.D. 516, 520 (C.D. Cal. 2011) (denying certification of rounding claim); *In re Taco Bell Wage & Hour Action*, 2012 WL 5923833 *10 (N.D. Cal. 2012) (denying certification of meal break claims.) Further, Defendant might have been able to convince the Court or a jury that it provided class members with meal and rest breaks but that some class members chose not to take them. Defendant also might have been able to convince the Court or a jury that its rounding policy did not result in systematic underpayment of class members. *Cf*

*Sees Candy Shop Inc. v. Superior Court,* 210 Cal.App.4th 889 (2012.) There is also a risk that the jury would fail to reach a unanimous verdict, or that a favorable verdict would be overturned on appeal.

As to the FCRA claims, Plaintiff alleges that Defendant used a disclosure form which contained extraneous information. Plaintiff contends that this facially violates the FCRA, which provides, in relevant part:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) ***a clear and conspicuous disclosure has been made in writing*** to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there. Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a). In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See, e.g., Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts; *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

11

1    The Ninth Circuit's decision in *Syed* held that: "in light of the clear statutory language
2    that the disclosure document must consist solely of the disclosure, a prospective employer's
3    violation of the FCRA is willful when the employer includes terms in addition to the
4    disclosure." *Syed v. M-I LLC*, 852 F.3d 492, 496 (9th Cir. March 20, 2017.)

5    Here, Defendant would argue that the state law disclosures are closely related enough to
6    the purpose of the disclosure that they should be regarded as not violating the FCRA or at least
7    that any violation should not be deemed willful. Defendant would also argue that the third party
8    liability waiver is distinguishable from the first party liability waiver at issue in the *Syed* case.

9    The availability of these defenses to Defendant, coupled with Plaintiff's burden to show
10    that Defendant engaged in "reckless disregard of statutory duty," make it challenging for
11    Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D.
12    438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor
13    of settlement" where "willfulness" under FCRA is a triable issue); *see also Torres v. Pet
14    Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015)
15    (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of
16    willfulness[under 15 U.S.C. §1681n]...[this] weighs in favor of settlement").

17    Indeed, a district court recently granted summary judgment as to similar claims brought
18    by another plaintiff. *See Lewis v. Southwest Airlines,* 2018 WL 400775 *4 (N.D. Tex. 2018.).
19    As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces
20    substantial risk of a complete loss in this case.

21    Some courts have refused to grant class certification for cases seeking statutory penalties
22    on the grounds that liability "would be enormous and completely out of proportion to any harm
23    suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc.*, No. 07-0276 CJC, 2007 U.S. Dist.
24    LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc.*, 340 F.3d
25    1246, 1255 n.5 (11th Cir. 2003)). While the Ninth Circuit clarified that such matters are
26    properly considered at the merits stage, the court also observed that the district court may have
27    the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff
28    were to prevail. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010).

1    In light of the challenges Plaintiff faces moving forward, the proposed Settlement
2  represents a fair and adequate resolution of these claims.

### 3.    The Risk, Expense and Complexity of the Case, Including the
### Risk of Decertification, Favor Approval of the Settlement

5    As to the wage and hour case, as set forth above there are risks that Plaintiff and the
6  Class might not prevail on the merits of the claims, or that class certification would not be
7  granted. Establishing the aggregate amount of damages for unpaid rest periods would require a
8  survey and expert testimony. It might be that even if a class were certified that the record at a
9  trial would lead to a motion for decertification or that a trier of fact would conclude that the
10  claims were not proven. *E.g*, *Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014)
11  ("*Duran*"), citing *Dilts v. Penske Logistics, LLC* 2014 WL 205039 (S.D. Cal. 2014) (dismissing
12  certified claims regarding off the clock work during meal breaks based on proof at trial.)

13    As to the FCRA case, substantial litigation on the FCRA is a recently development, and
14  litigants face a greater chance of changes in case law or statutory enactments that will eliminate
15  liability. And even if Plaintiff were to succeed in certifying the class, the "risk that a class action
16  may be decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc.*,
17  No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez
18  v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).

19    Plaintiff believes that in light of the Ninth Circuit's *Syed* decision, it is likely that
20  Plaintiff would prevail on motion for summary judgment on the matter of willfulness. But
21  Plaintiff's interpretation of *Syed* is relatively untested in district courts and there is no guarantee
22  it would prevail. It certainly did not prevail in *Lewis supra* at *4

23    Ultimately, in considering the risks of litigation, "a court may consider the vagaries of
24  litigation of immediate recovery by way of compromise to the mere possibility of relief, after
25  protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489
26  (E.D. Cal. 2010) (internal quotations omitted). Here, the Settlement delivers immediate
27  recovery for all Settlement Class Members and avoids the risks and expenses of protracted
28  litigation, including potential interlocutory appeals and an appeal after a trial. This factor

13

supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to… trial and appeal also support the settlement).

### 4. The Amount Offered in Settlement Supports Approval

The total Settlement Amount is $3,150,000. Since both Classes get 50% of the Net Settlement Amount, this analysis assumes that each Class receives half the Settlement Amount or $1,575,000.

The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded. *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.,* 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). This principle is of course more applicable to the wage and hour claims than it is to the FCRA claims where the principal relief is statutory penalties.

As to the wage and hour claims, as set forth in the Declaration of Shaun Setareh, the maximum damages at issue are $3,571,922.08.(Setareh Decl. ¶ 22.) $1,575,000 is 44% of $3,571,922.08. This is well within the range of wage and hour settlements approved by courts. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement amount that was approximately 16% of the plaintiffs' estimated potential recovery and finding that percentage "fair and adequate" given the difficulties in proving the case); *In re Omnivision Techs., Inc.*, 559 F. Supp.2d 1036, 1042 (N.D. Cal. 2008) (Conti, J.) (approving as "reasonable" a settlement amount that was just over 9% of the plaintiffs' estimated potential recovery based on the plaintiffs' risk of "getting nothing").

As courts in the Ninth Circuit have observed, "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979).

The FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater. With approximately 25,000 class members, the FCRA statutory damages are between $2,500,000 to $25,000,000. A low end statutory damages award is much more likely than a high end one. $1,575,000 is 63% of $2,500,000.

The gross recovery per class member for the FCRA portion of the settlement is $64.00 per class member. This compares favorably with other FCRA settlements in similar stand-alone disclosure cases. *See, e.g., Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval; claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement--$3.30 gross and approximately $41.39 net per class member); *In re Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval; claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or $7.31 gross per class member); *Aceves v. AutoZone,* Case No. 5:14-CV-02032 (C.D. Cal. 2016) (granting final approval; 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member).

Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes"). Importantly, the reasonableness of a settlement is not dependent upon the amount approaching the potential recovery plaintiffs might receive if successful at trial. *See Nat'l. Rural Tele. Coop.*, 221 F.R.D. at 527. Indeed, compromise is the very nature of settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979). Moreover, courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a proposed settlement, a range which recognizes the uncertainties of law and fact and attendant risks and costs associated with taking any litigation to completion. *See Frank v. Eastman Kodak Co.*, 288 F.R.D. 174, 186 (W.D.N.Y. 2005).

///

1

### 5. The Allocation of the Settlement

2    Plaintiff's counsel believes that the allocation of the settlement between the two cases is

3 fair. The two cases likely have approximately the same value. The damages at issue in the wage

4 and hour case are $3,571,922.08. The statutory damages at issue in the FCRA case range from

5 $2.5 million to $25 million (although a $25 million award based on the maximum $1000 per

6 class member statutory penalty seems unlikely). In the FCRA case, class certification is much

7 more likely. In the wage and hour case there is a greater risk that certification would be denied.

8 (Setareh Decl. ¶ 22.) A settlement value of approximately $1,500,000 would be appropriate for

9 both cases. (*Id.*)

10    It should be noted that an objection could be made that it is unfair to the California Class

11 that the total cost of notice is deducted from the Settlement Amount when the cost of FCRA

12 notice to 25,000 class members is obviously considerably than the cost of notice to the

13 approximately 900 California class members is. However, any unfairness of this is offset by the

14 fact that the payment to the Labor Workforce Development Agency of $112,500.00 is also

15 being deducted from the Settlement Amount.

16    ### 6. The Settlement Was Finalized After a Thorough Investigation

17

18    Courts may also consider the extent of discovery and the current stage of the litigation to

19 evaluate whether parties have sufficient information to make an informed decision to settle the

20 action. *See Linney v. Cellular Alaska Partnership,* (9th Cir. 1998), 151 F.3d at 1239. A

21 settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient

22 investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No.

23 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014)

24 (finding that counsel had "ample information and opportunity to assess the strengths and

25 weaknesses of their claims" despite "discovery [being] limited because the parties decided to

26 pursue settlement discussions early on.").

27    Plaintiff engaged in extensive investigation and discovery, including reviewing

28 documents and interviewing class members. (*See* Setareh Decl ¶¶ 5-7.) Based on this discovery

and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that

16

this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by Defendant.

### 7.     The Views of Experienced Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and information, as well as an analysis of the parties' claims and defenses. The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations. Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters including wage and hour and FCRA litigation. (*See* Setareh Decl. ¶¶ 19-20.) Likewise, Defendant's counsel, Carothers DiSante & Freudenberger LLP is a well-regarded defense firm specializing in employment litigation. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

Based on the satisfaction of the *Churchill* factors, the Court should find the proposed Settlement to be fair and adequate.

### B.     Conditional Class Certification Is Appropriate for Settlement Purposes

### 1.     The Proposed Class Meets the Requirements of Rule 23

Before granting preliminary approval of the settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality,

typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

### 2.     The Proposed Classes Is Sufficiently Numerous

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members). Here, Defendant estimates that there are approximately 900 California Settlement Class Members and approximately 25,000 FCRA Settlement Class Members, satisfying the numerosity requirement.

### 3.     There are Questions of Law and Fact that Are Common to the Class

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The operative criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019-1020. Where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas,' Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

Common questions exist as to the California wage and hour class. 1) Did Defendant maintain legally compliant meal and rest break policies? 2) Was Defendant's policy of rounding the time recorded by class members lawful?

Common questions also exist as to the FCRA class. Here, each FCRA Class Member executed an authorization form disclosing the employer's intent to obtain a credit report or background check on a current or prospective employee that also contained extraneous information. One single common question resolves the FCRA dispute: whether Defendant willfully violated the law by using these forms. Accordingly, the Court should find commonality. *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-418 (N.D. Cal. 2014)

(finding commonality on a contested certification motion where one common question resolves the issue of whether a defendant violated the FCRA by failing to include certain mandated information in the disclosure form).

### 4. Plaintiff's Claims Are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020)). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Plaintiff's claims are typical of the California wage and hour class. He was subjected to the same meal and rest break and rounding policies.

Similarly, Plaintiff asserts that FCRA Settlement Class Members' claims arising from Defendant's alleged unlawful use of the employment application are reasonably co-extensive with the legal claims asserted by Plaintiff. Each Settlement Class Member's claims arise from the same underlying conduct—namely, Defendant's failure to use a disclosure form free of extraneous language, in contravention of the FCRA. Plaintiff's claims are thus typical of the Class.

### 5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

Adequacy is satisfied, because "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). Adequacy will be found if (1) the proposed representative plaintiff does not have conflicts of interest with the proposed class, and (2) the plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff is adequate since he has no conflict of interest with the proposed Class. In addition, Plaintiff is represented by competent counsel with deep experience in litigating class actions including wage and hour and FCRA actions, and who do not have a conflict of interest with the class. (*See* Setareh Decl.¶¶ 18-20.) Thus, Plaintiff satisfies the adequacy prong.

**6. Common Issues Predominate Over Individual Issues**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed Class is maintainable under Rule 23(b)(3), as common questions predominate over any question affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy. *Id*. (citing Fed. R. Civ. P. 23(b)(3)).

Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement makes relief available for all Settlement Class Members based solely on easily ascertainable criteria, bypassing whatever individual evidentiary and factual issues that could arise in litigation in determining liability or damages. Consequently, common questions predominate over individual issues.

**7.     Class Settlement Is Superior to Other Available Means of Resolution**

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrate the advantages of a collective bargaining and resolution process.

Furthermore, manageability at trial is not a concern in the class action settlement context, "for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Additionally, although the benefits of the Settlement negotiated on behalf of the Class are significant, the amount of penalties made available for FCRA violations, ranging

from \$100 to \$1,000, is not nearly enough to incentivize individual class members into action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). Here, the efforts and funds required to marshal the type of evidence, including potentially expert testimony, to establish liability against well-financed corporate defendant would also discourage Settlement Class Members from pursuing litigation.

The superiority of proceeding through the class action mechanism is demonstrable in this case. Through the class action device, Plaintiff's counsel was able to negotiate a global Settlement with Defendant that, if approved, will provide Settlement Class Members with immediate monetary relief. As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are satisfied, certification of the proposed Settlement Class is appropriate.

## C.    The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement

Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice given "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties have agreed on a notice plan that satisfies the requirements of Rule 23. (Settlement Agreement § 46.)   As to California Class Members they will be mailed a Long Form Notice as well as an FLSA Consent to Join Form. As to the FCRA Class Members they will be mailed a Postcard Notice which directs them to the settlement website for the Long Form Notice. The Settlement Notices include all the content required by Rule 23(c)(2)(B), such as a description of the action and Class claims, as well as the Settlement Class Members' right to opt out of, object to, or comment on the proposed Settlement, including any application for attorneys' fees, costs, and service awards. *See Churchill Village*, 361 F.3d at 576 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation omitted).

## IV.    **CONCLUSION**

The parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiff moves the Court to preliminarily approve the Settlement Agreement; direct the dissemination of notice to the class as proposed; and set a hearing date and briefing schedule for final Settlement approval and Plaintiff's fee and expense application.

Respectfully submitted,

SETAREH LAW GROUP

Dated: April 13, 2018                    BY___ */s/ Shaun Setareh*_____
                                                          SHAUN SETAREH
                                                          Attorneys for Plaintiff
                                                          ADAN ORTIZ

22